Carl D. Crowell, OSB No. 982049
email: crowell@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **VOLTAGE PICTURES, LLC,** a California Limited Liability Company, and **TCYK, LLC**, a California Limited Liability Company,<br><br>      Plaintiffs,<br><br>v.<br><br>**HAIG REVITCH**<br>(IP address: 67.170.161.21)<br><br>      Defendant. | Case No.: 14-cv-00301-AA<br><br>FIRST AMENDED COMPLAINT<br><br>EXHIBIT 1<br><br>COPYRIGHT INFRINGEMENT<br><br>ORS 647.105 – State Trademark<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiffs Voltage Pictures, LLC, and TCYK, LLC, complain and allege as follows:

JURISDICTION AND VENUE

1.  This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq. ("The Copyright Act") and for a violation of ORS 647.105, Oregon's State Trademark Law.

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the defendant is believed to reside in this district.

## PARTIES

### PLAINTIFFS

5.     Plaintiff Voltage Pictures, LLC ("Voltage") is a limited liability company with principal offices in Los Angeles, California that produces, markets and distributes motion pictures including a motion picture titled *The Company You Keep* ("motion picture"), the subject work in this lawsuit.

6.     Plaintiff TKYC, LLC is a limited liability company with principal offices in Los Angeles, California and the registered copyright holder for the motion picture, *The Company You Keep*, the subject work in this lawsuit.

### The Rights of TCYK, LLC

7.     The motion picture in this case, titled *The Company You Keep*, has been registered with the United States Copyright Office by the owner, TCYK, LLC, Registration No. PAu 3-66-935, 2012.

8.     Under The Copyright Act, TCYK, LLC is the proprietor of all copyrights, title, and related interest in the motion picture.

9.     The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

10.    The motion picture is currently offered for sale in commerce.

11.    The motion picture is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment.

12.     Defendant had notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

### Rights of Voltage

13.     Voltage has sole and exclusive rights to use the mark VOLTAGE PICTURES in association with its goods and services both within the State of Oregon and nationwide.

14.     Voltage marks its works with the trademark VOLTAGE PICTURES to distinguish its products from others and to identify it as the source of its products.

15.     In the marketing of *The Company You Keep*, Voltage has branded the motion picture with plaintiff's famous, distinctive and registered trademark, VOLTAGE PICTURES.

16.     The mark VOLTAGE PICTURES has been registered with the State of Oregon pursuant to ORS 647.015, Registry Number 42677.

### THE DEFENDANT

17.     The defendant Haig Revitch is the party identified by Internet Service Provider (ISP) Comcast as being assigned use of Internet Protocol ("IP") Address 67.170.161.21 which on February 10, 2014, at 2:27:37 AM UTC, was observed infringing the motion picture.

18.     Through both geolocation, and as identified by the ISP, the defendant resides in Portland, Oregon.

19.     The defendant's IP address has been associated with significant infringing activity with hundreds of titles exchanged on peer-to-peer networks associated with this IP address. An abbreviated list of titles associated with this IP address is shown on Exhibit 1.

20.     The volume and titles of the activity associated with defendant's IP address, some of which is listed in Exhibit 1, indicates that the defendant is either the actual infringer or provides

access to the Internet to someone who resides with the defendant, as such activity indicates the infringer is an authorized user of the IP address with stable and consistent access.

21.     The volume of the activity associated with defendant's IP address, some of which is listed in Exhibit 1, indicates that anyone using or observing activity on the IP address would be aware of the conduct of the infringer.

22.     The volume and titles of the activity associated with defendant's IP address, some of which is listed in Exhibit 1, indicates that the infringer is not a child, but an adult with mature tastes.

23.     The defendant's IP address was at that time of observed infringement managed by Internet Service Provider ("ISP") Comcast, who on information and belief, generally assigns an IP address to a single party for extended periods of time, often for months.

24.     On information and belief, the defendant either continued to participate in the infringement of plaintiffs' rights and others after notice of this suit, or allowed the infringer to use his IP address to infringe plaintiffs' rights and others after notice of this suit.  As such, the defendant's direct or contributory acts of willful infringement continued even after express notice of this suit.

25.     Plaintiffs intend to seek additional discovery to ascertain the true scope and involvement of the defendant who is currently refusing to respond to inquiries.

BACKGROUND

PEER-TO-PEER INTERNET PIRACY

26.     As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to

jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others involved in creative work.  And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

27.   In 2013, in recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2, which made the following findings:

> Whereas the United States and other nations share the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films… and technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's economy, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
> …
> Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy; and
> Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and
> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
> Whereas intellectual property infringement can undermine the nation's economic security; and
>  Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
> Whereas intellectual property, including trademarks, [are] essential …; and
> …
> Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;
> …

28.    As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq. and ORS Chapter 647, and the enforcement of intellectual property rights, and in particular the fight against

counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

29.     Peer-to-peer networks, at least in their most common form, are computer systems that enable internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the internet.

30.     The particular peer-to-peer protocol at issue in this suit is the BitTorrent protocol.

31.     To use BitTorrent, a user intentionally downloads a program that they install on their computer called a "client."  The BitTorrent client is the user's interface during the downloading/uploading process.  The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.

32.     Users then intentionally visit a "torrent site" or network site to find media or content available for download, often using a standard web browser.

33.     A torrent site is often an advertisement-revenue based or subscription-supported index of media or content being made available by other users on the network and maintains a listing of movies and television programs among other copyrighted content.

34.     A user then uses the torrent site to connect with other users and exchange content though the BitTorrent protocol often with many users at the same time.

35.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

36.     Many parties, and possibly defendant, have paid money to facilitate or permit increased access to content which has been made available without authorization.

37. To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available through increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this they reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

38. A significant element of the BitTorrent model is that those who participate and download movies not only share and upload movies with others, but participants are often rewarded through various means based on the volume and availability of content participants in turn provide to the network. In sum, there is a feedback incentive for participants as they obtain not only the benefit of their pirated copy of a movie, but they obtain other benefits by increasing the availability of pirated content to others.

39. As such, there are a growing number of users that participate in peer-to-peer networks and receive personal gain or compensation in that the networks they use reward those who provide large numbers of files for upload to others. Many parties, and possibly defendant have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie.

40. The use of BitTorrent does more than cause harm through the simple theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

41. As can be seen from Exhibit 1, IP address 67.170.161.21 was used as a prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy.

///

///

COMPLAINT - FIRST AMEND.                                                                Page 7 of 14

## FACTS OF THE CLAIM

### IP Address

42.     An Internet Service Provider, ("ISP"), grants access to the Internet and the ability to send and receive information, whether in the form of an email, photo or motion picture.  To connect to the Internet a user must contract with an ISP and create an account for service either directly, or through an intermediary such as a subscriber.

43.     The ISP then generally assigns each subscriber a unique IP address.  An IP address is like the address used on an envelope.  It is the public identifier each user uses to tell the world not only where they are sending data from, but the location to where any requested data should be sent.

44.     Plaintiff has, to a reasonable degree of scientific certainty, learned the ISP used by the infringer, the torrent file copied and distributed by the infringer as identified by file hash, the BitTorrent client application utilized by the infringer, and the location of the infringer, as determined by geolocation technology.

45.     ISP Comcast has identified the defendant as the party assigned IP address 67.170.161.21 at a time of observed direct infringement and confirmed plaintiffs' geolocation.

46.     Based on the volume, type and persistence of the activity associated with IP address 67.170.161.21, it is believed the defendant is the actual subscriber and infringer who contracted with ISP Comcast, or knowingly permitted the acting infringer to operate through their IP address.

47.     Based on the observed BitTorrent activity that continued after express notice of this suit, it is believed the defendant either willfully continued to commit infringement of plaintiffs' rights and others after notice of suit, or willfully facilitated acts of infringement by others after notice of suit.

Conduct of Infringer

48.     Plaintiffs have recorded the infringer as copying and publishing plaintiffs' motion picture via BitTorrent, as plaintiffs' investigator has downloaded the motion picture via BitTorrent from the infringer and others.

49.     On operation, the infringer accessed the Internet either as the subscriber to the ISP (Comcast) account or through access provided by the defendant.  The infringer then initiated his or her infringing conduct by first intentionally logging into one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows and software. The infringer then intentionally obtained a torrent file identified by a "hash" which was attached to plaintiff's motion picture from the index and intentionally loaded that torrent file into a computer program or client designed to read such files.

50.     With the torrent file intentionally loaded by the infringer, his or her BitTorrent client used the BitTorrent protocol to initiate connections with possibly hundreds of other users possessing and uploading or sharing copies of the digital media described in that same hash, namely, plaintiff's motion picture.  As the motion picture was copied to the infringer's computer piece by piece, these downloaded pieces of plaintiff's motion picture were then immediately published and made available for upload to other users' computers.  Thus, the infringer not only participated in the BitTorrent by downloading the plaintiff's motion picture, but also uploaded or published the work via BitTorrent and made it available to others.

51.     Once fully transferred to any party, the final copy of the motion picture can then be played and would appear to be a full copy of the motion picture and could be presented as an authorized and legitimate copy.

52.     On information and belief, the infringer's conduct was unauthorized and in violation of the license and terms of access to the Internet through his or her ISP.

53.     Upon information and belief, the infringer was a willing and knowing participant in the infringing of plaintiff's copyright.

54.     Upon information and belief, the infringer also obtained compensation or other personal benefit through making content, including plaintiff's motion picture, available to others.

55.     On information and belief, the volume and persistence of infringing activity though IP address 67.170.161.21 is of such an amount that it would have been readily apparent to anyone using that IP address.

## FIRST CLAIM FOR RELIEF

### DIRECT COPYRIGHT INFRINGEMENT

56.     Defendant, without the permission or consent of TCYK, LLC, copied and distributed plaintiff's motion picture through a public BitTorrent network.

57.     Defendant's actions infringed TCYK, LLC's exclusive rights under The Copyright Act.

58.     Defendant's conduct has been willful, intentional, in disregard of and indifferent to TCYK, LLC's rights.

59.     As a direct and proximate result of defendant's conduct, TCYK, LLC's exclusive rights under 17 U.S.C. § 106 have been violated.

60.     TCYK, LLC is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

61.     The conduct of defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury.

62.     Pursuant to 17 U.S.C. §§ 502 and 503, TCYK, LLC is entitled to injunctive relief prohibiting defendant from further contributing to the infringement of TCYK, LLC's copyrights and ordering that defendant destroy all copies of the motion picture made in violation of TCYK, LLC's rights.

SECOND CLAIM FOR RELIEF

ALTERNATE THEORY – INDIRECT INFRINGEMENT

63.   Plaintiffs repeat and reallege each of the allegations 1 - 55 above.

64.   Defendant obtained Internet access through an ISP and permitted, facilitated and promoted the use of the Internet access for the infringing of TCYK, LLC's exclusive rights under The Copyright Act by others, even after notice of this suit.

65.   Defendant failed to reasonably secure, police and protect the use of their Internet service against use for improper purposes such as piracy, including the downloading and sharing of the motion picture by others.

66.   Defendant's failure was with notice as piracy is in violation of the license for access granted by their ISP which issued defendant an IP address to access the Internet.

67.   Defendant's failure was with notice as the volume of activity associated with IP address 67.170.161.21 is such that defendant either knew of or should have known of the infringing activity.

68.   Well after defendant received notice of this suit, BitTorrent activity continued to be observed associated with defendant's IP address, such that defendant's willful conduct persisted even after express notice.

69.   Defendant is liable as an indirect or secondary infringer.

70.   Defendant's conduct has been willful, intentional, in disregard of and indifferent to plaintiffs' rights.

71.   As a direct and proximate result of defendants' conduct, TCYK, LLC's exclusive rights under 17 U.S.C. § 106 have been violated.

72.   TCYK, LLC is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

73.     The conduct of defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury.

74.     Pursuant to 17 U.S.C. §§ 502 and 503, TCYK, LLC is entitled to injunctive relief prohibiting defendant from further indirect infringement of its copyrights and ordering that defendant destroy all copies of the motion picture made in violation of its rights and take such further steps as are necessary to prevent further indirect infringement.

### THIRD CLAIM FOR RELIEF

### ORS 647.105 – STATE TRADEMARK

75.     Plaintiff Voltage repeats and realleges each of the above allegations.

76.     Pursuant to ORS 647.095, a person who without the consent of Voltage uses the VOLTAGE PICTURES mark in connection with the distribution of a reproduction, counterfeit or copy of a motion picture is liable for the equitable remedies provided in ORS 647.105.

77.     Pursuant to ORS 647.105, "The owner of a mark registered under this chapter may proceed in a civil action to seek an injunction against the … use, display or sale of a counterfeit or imitation of the mark."

78.     Defendant, without the authorization or consent of Voltage, used, copied and distributed a reproduction, counterfeit and copy of a motion picture bearing Voltage's registered trademark VOLTAGE PICTURES or facilitated in such distribution.

79.     Defendant has acted with knowledge and in bad faith in their infringement of Voltage's rights.

80.     Any final copy or counterfeit of the motion picture produced and distributed through the BitTorrent protocol could be presented in playback as an authorized original presenting Voltage's registered marks and thus could lead to likely confusion as to the authenticity of the copy or counterfeit.

81.     Voltage comes to this court seeking the equitable remedies provided by ORS Chapter 647, namely an injunction against those who would, without authorization, copy, reproduce and distribute motion pictures which bear its registered trademark.

82.     Voltage is entitled to an order of from this court enjoining the defendant from infringing its rights and directing defendant to delete all unauthorized copies of Voltage's motion pictures.

## DAMAGES

83.     With the specific intention of deterring Internet piracy such as has been committed by defendant in this case, Congress significantly increased the maximum award for willful infringement from $100,000 to $150,000 per title.

84.     Plaintiff TCYK, LLC has been damaged and claims statutory damages from the infringer pursuant to 17 U.S.C. § 504(c)(2) and an amount to be determined by the court.

85.     Plaintiffs each have been damaged and claim equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against defendant as follows:

- A.    For entry of permanent injunction enjoining defendant from directly, indirectly or contributory infringing plaintiffs' rights, including without limitation by using the internet to reproduce or copy plaintiffs' motion pictures, to distribute plaintiffs' motion pictures, or to make plaintiffs' motion pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiffs.  And further directing defendant to destroy all unauthorized copies of plaintiffs' motion pictures;

- B.    Statutory damages pursuant to 17 U.S.C. § 504 in an amount deemed just and proper by the Court.

    C.    For plaintiffs' reasonable costs and attorney fees pursuant to 17 U.S.C. § 505 and ORS 647.105(2); and

    D.    For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

DATED: July 13, 2014

        Respectfully submitted,

        CROWELL LAW

        /s/Carl D. Crowell
        Carl D. Crowell, OSB No. 982049
        Of attorneys for the plaintiffs