IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VOLTAGE PICTURES, LLC, a California )
Limited Liability Company; and )
TCYK, LLC, a California Limited )
Liability Company, )
                                   )
                                   )
            Plaintiffs,            )    No. 6:14-cv-301-AA
        v.                         )    ORDER
                                   )
HAIG REVITCH,                      )
                                   )
            Defendant.             )
                                   )
_____    )

AIKEN, Chief Judge:

Plaintiffs bring this action asserting copyright infringement.
Plaintiffs allege that defendant copied and published plaintiffs'
motion picture, *The Company You Keep*, via a bittorent client.
Plaintiffs initiated this case against a Doe defendant identified
as conducting the allegedly infringing activity through the
internet protocol (IP) address 67.170.161.21. After securing an ex

1 - ORDER

parte subpoena to obtain subscriber information from the internet service provider (ISP) Comcast, plaintiffs allege defendant Haig Revitch (the subscriber) is responsible for the allegedly infringing activity:

17. The defendant Haig Revitch is the party identified by Internet Service Provider (ISP) Comcast as being assigned use of Internet Protocol ("IP") Address 67.170.161.21 which on February 10, 2014, at 2:27:37 AM UTC, was observed infringing the motion picture.

....

19. The defendant's IP address has been associated with significant infringing activity with hundreds of titles exchanged on peer-to-peer networks associated with this IP address.

20. The volume and titles of the activity associated with defendant's IP address, some of which is listed in Exhibit 1, indicates that the defendant is either the actual infringer or provides access to the Internet to someone who resides with the defendant, as such activity indicates the infringer is an authorized user of the IP address with stable and consistent access.

21. The volume of the activity associated with defendant's IP address, some of which is listed in Exhibit 1, indicates that anyone using or observing activity on the IP address would be aware of the conduct of the infringer.

22. The volume and titles of the activity associated with defendant's IP address, some of which is listed in Exhibit 1, indicates that the infringer is not a child, but an adult with mature tastes.

23. The defendant's IP address was at that time of observed infringement managed by Internet Service Provider ("ISP") Comcast, who on information and belief, generally assigns an IP address to a single party for extended periods of time, often for months.

24. On information and belief, the defendant either continued to participate in the infringement of

plaintiffs' rights and others after notice of this suit,
or allowed the infringer to use his IP address to
infringe plaintiffs' rights and others after notice of
this suit. As such, the defendant's direct or
contributory acts of willful infringement continued even
after express notice of this suit.

. . . .

46. Based on the volume, type and persistence of the
activity associated with IP address 67.170.161.21, it is
believed the defendant is the actual subscriber and
infringer who contracted with ISP Comcast, or knowingly
permitted the acting infringer to operate through their
IP address.

47. Based on the observed BitTorrent activity that
continued after express notice of this suit, it is
believed the defendant either willfully continued to
commit infringement of plaintiffs' rights and others
after notice of suit, or willfully facilitated acts of
infringement by others after notice of suit.

First Amended Complaint (#12) at ¶¶ 17, 19-24, 46-47.

The court has taken issue with the tactics of plaintiff

Voltage pictures in the past, such as using the court's subpoena

power to extract information from ISP's regarding hundreds of

subscribers via the filing of a single case, to apparently reap

quick and easy settlements. The court has addressed these concerns

by requiring plaintiff to file separate cases against each alleged

violator. This requirement adds hundreds of thousands of dollars

in filing fees and substantially increases plaintiff's incentive to

pursue only cases it intends to actually litigate.

However, defendant in this case views the manner in which

plaintiffs have pursued these cases as much more nefarious.

Accordingly, defendant brings two of his own counterclaims for

copyright misuse and unfair business practice.  He alleges that he did not download the movie and that plaintiffs have no evidence that he did.  The claims then turn to the IP address which forms the crux of his claim, i.e., that plaintiffs misrepresented that an IP address is a person.  The claims appear to be denials of liability or affirmative defenses disguised as counterclaims and a challenge to the manner in which plaintiffs litigate copy infringement nationwide.  Consequently, plaintiffs move to dismiss the counterclaims.  Defendant begins his counterclaims with the allegations that

> 91. This case is one of hundreds nationwide, including in Oregon, naming thousands of individual citizen consumers, including many who are completely innocent of the alleged wrongdoing. The suits themselves, moreover, are only the tip of an iceberg of misrepresentation, intimidation, and copyright misuse. Voltage and non-party Crystal Bay Corporation ("CBC"), in particular, have practiced a shakedown scheme in this State that violates Oregon's law against unfair business practices.

> 92. On information and belief, Voltage has retained CBC, or some alter ego or agent of CBC, as its investigator, and has authorized a business practice that essentially implements the business plan attributed to GuardaLey, or its equivalent.

> 93. On information and belief, Voltage has conspired with one of more of CBC, IPP International UG, IPP Limited, IPP International, APMC, GuardaLey Ltd., and/or the agents or alter egos of one or more of the foregoing to implement this business practice, including in particular its nonjudicial, nonprivileged aspects....

Second Amended Answer (#30) at ¶¶ 91-93.

A.    Copyright Misuse

For his copyright misuse claim, defendant alleges that an IP address is not a person and an internet subscriber is not liable for copyright infringement.  More specifically, defendant alleges that:

> 103. TCYK and Voltage have misrepresented the law to Oregon residents, including Mr. Revitch, as part of a campaign intended to extract money through threats and intimidation, by imposing undue burdens and costs, and by seeking unfairly to harm innocent people's reputations.

> 104. TCYK and Voltage unfairly target people who cannot afford to defend themselves against Plaintiff's meritless claims.

> 105. TCYK and Voltage have misused their alleged copyright by asserting infringement in an abusive manner without conducting a valid investigation.

> 106. TCYK and Voltage have deliberately conducted an intimidation campaign based on false and misleading communications to residents of Oregon and other States, intended to extort money without regard as to whether the people targeted by that campaign infringed any copyright in the Movie.

> 107. TCYK and Voltage have misused their alleged copyright by unfairly claiming rights broader than those granted by the copyright itself.

> 108. TCYK and Voltage have used their alleged copyrights to secure (or to attempt to secure) exclusive rights not granted by the copyright office, contrary to public policy.

> 109. TCYK and Voltage have improperly attempted to mislead and defraud innocent residents of this State, including Defendant, by unfairly threatening infringement penalties that exaggerate and/or misstate the law.

Second Amended Answer (#30) at ¶¶ 103-109.

5 - ORDER

There are number of problems with this counterclaim that subject it to dismissal.  The claim sounds in fraud and thus insufficiently pleads the particulars of the alleged misrepresentations.  Fed. R. Civ. P. 9(b) states that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The rule demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how" of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

The particularity requirement serves three purposes: (1) to provide adequate notice to allow a defense to the charge and deter the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit unilateral imposition upon the court, the parties and society enormous social and economic costs absent some factual basis. In re

Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 (9th Cir. 1996).

Defendant pays lip service to this pleading requirement in his second counterclaim under the Oregon Unfair Trade Practices Act (although it is unclear if the allegations in that claim are meant to form part of the basis of the copyright misuse claim).[1] In that claim, defendant alleges:

> 122. The who, what, where, when and how of counterclaim defendants' fraudulent conduct can be stated as follows:
>
> Who - Voltage and at least CBC
>
> What - A business plan that targets the innocent, weak, and defenseless, using false and misleading statements to pressure people who have done nothing wrong to settle for less than the cost of legal defense.
>
> When - On information and belief, Voltage and CBC have operated this business practice in Oregon for at least the past year.
>
> Where - Oregon and other States.
>
> How - To extort money from innocent people, Voltage uses phone, e-mail and the United States mail to convey deliberately misleading information and apply pressure to settle for less than the cost of legal representation.

Second Amended Complaint (#30) at ¶ 122.   However, this is inadequate to apprise plaintiffs of what the misrepresentation was, when it was made and to whom, how it was material, and how it was relied upon to the detriment of defendant.   To the extent defendant asserts that the misleading statement is that an IP address is a

---

[1]The pleading requirements of Rule 9 apply to state law claims as well.  See Vess, 317 F.3d at 1102-03.

person (and apparently the subscriber is strictly liable for that "person"), the complaint itself makes clear that plaintiffs are not claiming such in this case. Plaintiffs plead facts indicating that it believes the level of activity and notice provided demonstrate that the subscriber himself is engaging in the allegedly infringing activity or is knowingly and willingly facilitating it. To the extent defendant suggests that there has been some pre-litigation demand letter wherein plaintiff made some misrepresentations intended to mislead defendant into settling a baseless claim, no such allegations are in the complaint. Moreover, defendants further elucidation of the alleged fraudulent business plan only provides some vague allegations of a scheme to "shake down individuals in the United States by accusing and suing customers who subscribe for residential internet services, without regard to any individual consumer's actual circumstances." Opposition (#34) at p. 2; pp. 1-7. Again, defendant asserts that the core of the plan is the premise that an IP address infringes. As noted, there is no allegation that plaintiffs sought to mislead defendant into paying some sort of a demand because and only because he subscribes to the IP address that allegedly infringed. Plaintiffs' allegations are sufficient to allege that defendant himself engaged in the infringing conduct.[2]

---

[2]Defendant also claims that plaintiff has perpetuated a fraud on the courts by using fictitious declarants. However, defendant

Defendant provide a comparison of a purported demand letter by Voltage in another Oregon case and a letter from the infamous Prenda law firm porn trolling cases, but does not allege plaintiff received such a letter.[3]  Moreover, although the letter reveals some heavy handed tactics, the statements contained therein are not fraudulent, but are founded at least in some legally supported basis.  <u>See</u> Declaration of James Geringer (#36) at p. 23.

In addition, the claim fails to allege a claim for copyright misuse.  Defendant asserts that copyright misuse is a claim in and off itself in this circuit.  <u>See</u> Opposition (#34) at p. 17 citing, <u>e.g.</u>, <u>Practice Management Information Corp. v. American Medical Ass'n</u>, 121 F.3d 516 (9th Cir. 1997).

---

only cites a purported fictitious declarant asserted by another attorney in another case in another district in a discovery motion. There is no allegation of such activity in this case.  Defendant further claims that plaintiffs exploit false positives, but other than denying infringing plaintiffs' copyright, plaintiff does not allege how defendants know that he is innocent, but are attempting to extract a settlement from him anyway.

[3]It is actually unclear if defendant received the letter as counsel states "[t]he text ... is taken from a 2013 letter signed by plaintiff's counsel **in this case in another bittorrent case by for** (sic) **Voltage Pictures in Oregon."**  Declaration of James Geringer (#36) at p. 22 (emphasis added).  Presumably Geringer meant to state the letter was signed by plaintiff's counsel in another case.  Nonetheless, the letter itself is not attached and does not provide enough detail to satisfy Rule 9.  Moreover, because the statements in the letter appear to have some legitimate basis despite their heavy handed nature, the are likely protected under the <u>Noerr-Pennington</u> doctrine.  <u>See</u> <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 936-39 (9th Cir. 2006) (communication of settlement demands prior to initiating any actual litigation is protected absent sham demands rooted on baseless or illegitimate claims).

While the Practice Management Information Corp. court did find that defendant engaged in copyright misuse and granted declaratory judgment, the court specifically noted that is an affirmative defense to preclude copyright enforcement during the period of misuse. See id. at p. 520. Defendant does, however, cite a district cases allowing copyright misuse to move forward as a counterclaim. See. e.g., Apple Inc. v. Psystar Corp., 2009 WL 303046 (N.D.Cal. Feb 6, 2009).

District courts within the circuit have reached disparate conclusions. In Ticketmaster L.L.C. v. RMG Technologies, Inc. 536 F.Supp.2d 1191, 1199 (C.D.Cal. 2008) the court dismissed with prejudice a counterclaim for declaratory relief for copyright misuse, reasoning that litigating a counterclaim and an affirmative defense of copyright misuse would be duplicative. See also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 269 F.Supp.2d 1213, 1225-27 (C.D.Cal.2003). In contrast, the court in Apple opined that a counter claimant "may well have a legitimate interest in establishing misuse independent of" its need to defend an infringement claim "to clarify the risks it confronts by marketing the products at issue ... or others it may wish to develop." 2009 WL 303046, at *2. Also, the Apple court noted, "misuse would bar enforcement (for the period of misuse) not only as to defendants who are actually a party to the challenged license but also as to potential defendants not themselves injured by the misuse who may

have similar interests." Id. The Apple court expressly disagreed with the holdings in Ticketmaster and Metro-Goldwyn-Mayer. Id. at *3. Even assuming that such a claim may be alleged separate from an affirmative defense (as it must here given that defendant apparently relies on misrepresentations allegedly made to others in other cases, but apparently not made to him), the pleadings fail to state a claim.

Defendant's claim seeks to resolve the "continuing threat posed ... by plaintiffs' theory that their copyright registration imposes on Mr. Revitch a "duty to police" the internet access he obtains as an Oregon consumer." As noted above, plaintiffs' allegations seek to hold defendant liable for alleged willful copying and distribution and do not assert some sort of strict liability. To the extent defendant asserts that plaintiffs have engaged in such conduct with others and that conduct bars enforcement of the copyright against him, the claim stretches the theory of copyright misuse beyond its contours.

The copyright misuse doctrine does not prohibit using conditions to control use of copyrighted material, it prevents copyright holders from using the conditions to stifle competition. Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1159 (9th Cir. 2011). The alleged misuse in this case has nothing to do with competition as it, at best, seeks to control unauthorized distribution. Even if plaintiffs seek to require internet subscribers to monitor their

11 - ORDER

networks for plaintiffs to track down violators and hold those
subscribers strictly liable for all who may engage in unauthorized
use their networks, that is not stifling competition as the copying
and distribution is still a violation of copyright law by someone.
The alleged conduct does not restrict competitors or prohibit
legitimate copying and distribution of competing works.[4] Moreover,
even assuming such conduct is copyright misuse, it essentially
seeks to have defendant represent a large class of users subject to
misuse to which he has not been subjected. As noted, the complaint
does not seek to hold defendant strictly liable for the conduct of
unknown or even known persons that he has not willingly
facilitated. This is not to say the issue of whether defendant is
in fact liable for copyright violations engaged in by others may
not be litigated, only that defendant may not properly allege a
counterclaim for copyright misuse. Accordingly, defendant's
counterclaim for copyright misuse is dismissed.


B.  Unfair Business Practice

     Defendant alleges that plaintiffs and non-party CBC  have
violated the Oregon Unlawful Trade Practices Act by causing a

---

     [4]In addition, defendant's proposed allegations regarding
unlicensed investigators does not implicate restriction of
legitimate competition. Similarly, defendant's attack on the
alleged demand not to delete files does not implicate competition
and is arguable supported by the duty to preserve evidence once a
party is on notice of possible litigation.

12 - ORDER

likelihood of confusion and misunderstanding as to plaintiff
Voltage's connection to CBC, to ISPs, the movies it seeks to
protect, and the data relied upon to leverage money from
Oregonians. As noted above, the claim fails to comply with the
pleading requirements of Fed. Civ. P. 9(b). Even assuming
defendant could provide sufficient information regarding the
alleged misrepresentations, to whom they were made and when, the
statements' materiality, and detrimental reliance, defendant
essentially seeks to act as a some sort of attorney general
litigating the claim on behalf of those harmed as he does not
allege that such tactics were specifically used against him. To
the extent defendant alleges that there is no basis to conclude
that he engaged in the alleged infringing activity and that he
merely subscribes to the IP address at which the infringing
activity occurred, he may argue that as a defense, but plaintiffs'
allegations make clear that it does not seek to hold him strictly
liable for that allegedly infringing activity. Absent an
allegation that plaintiffs demanded a settlement from defendant by
asserting he is liable for any activity flowing through his IP
address regardless of scienter, the claim must be dismissed. Even
assuming such allegation, because the claim is based on ORS §
646.608(1)(c), it is unclear how the failure to allege CBC's
involvement causes a likelihood of confusion as the statement by
itself causes the confusion and apprising their target of the

13 - ORDER

alleged author of the "shake down" scheme would not eliminate that confusion.  <u>See</u> ORS § 646.608(1)(c) (A person engages in unlawful business practice if he "[c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another."[5]  Accordingly, defendants second counterclaim for unfair business practice is dismissed.


C.    <u>Motion to Join APMC and CBC</u>

    Defendant seeks to join the Anti-Piracy Management Company and Crystal Bay Corporation based on their alleged involvement in purported copyright misuse and unfair trade practices.  However, as noted above, those counterclaims are dismissed and thus, the motion to join is denied.


D.    <u>Motion to Strike</u>

    Plaintiffs move to strike much of the materials defendant has submitted in support of their counterclaims asserting much of it relates to other irrelevant litigation among other reasons.  The court has dismissed the counterclaims and thus it is not necessary to strike the materials and the motion is denied.  However, the

---

    [5]While defendant alleges some confusion based on the plaintiffs' relation to the subject movie, it is not alleged that plaintiff's misrepresent their authority to pursue the copyright violations or that they made such an assertion to him in an attempt to extract a settlement.

14 - ORDER

denial is without prejudice to any appropriate motions in limine/objections seeking to prevent use of the materials for purposes of dispositive motions or at trial.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to dismiss (#33) is granted, defendant's motion for joinder (#37) is denied, and plaintiffs' motion to strike (#38) is denied.


DATED this _23_ day of January 2015.

_____
Ann Aiken
United States District Judge


15 - ORDER